UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHONYEAH DOUGLAS,

                      Petitioner,

                            **Hon. Hugh B. Scott**
                            **06-CV-297**
                            **(Consent)**

              v.

                            **Decision**
                            **&**
                            **Order**

DARWIN LaCLAIR, (Superintendent Great Meadow
Correctional Facility),

                      Respondent.

Before the court is Shonyeah Douglas's ("Douglas") petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.

BACKGROUND

On January 26, 2002, Douglas, Taretha Johns, and Phiekou Irvin, were driving in the Town of Phelps in a 1992 Dodge Shadow. (T., at 81, 86)[1] While patrolling the Thruway, Officer Jordan Bonafede observed that the Dodge Shadow lacked a license plate light or rearview mirror. (T. at 81-82). Officer Bonafede pulled the car over and approached the vehicle on the passenger side. Douglas, sitting in the passenger seat, rolled down the window for Officer Bonafede, who testified that he immediately could smell burned marijuana in the car. (T. at 84). Officer

---

[1] Citations to "(T. at ___)" refer to the September 25 and 26, 2002 state court trial transcript.

Bonafede asked for, and received, identification from the passengers, and called for backup. (T. at 83-84, 86). Officer Michael Jurek arrived as backup, about 15 to 20 minutes later. At the scene, Officer Jurek activated his overhead lights automatically engaging the video equipment in his patrol car recording the traffic stop on video. (T. at 132). The Officers then removed the passengers from the vehicle to search the passengers and the cars. (T. at 86). Officer Bonafede patted down Douglas, searching for weapons and contraband. (T. at 86). From that search, he found a pair of earrings in Douglas's pocket. (T. at 96). In the car, the officers found traces of marijuana. (T. at 97). At that this point, Officer Bonafede testified that although he still needed to discuss the situation with Douglas, he thought the traffic stop was over and stopped the video camera which had been recording the stop. (T. at 95). Officer Bonafede asked Douglas about the earnings. (T. at 96). Following the discussion and the vehicle searches, Officer Jurek placed Irvin, who had admitted to smoking marijuana, under arrest. (T. at 88).

While Officer Jurek was dealing with Irvin, Officer Bonafede observed Douglas placing something in his pants, near his groin. (T. at 88 ). Douglas, according to Officer Bonafede, would not remove his hands from his inner thigh to allow Officer Bonafede to search him. (T. at 89). While trying to get Officer Jurek's attention to help with the search, Officer Bonafede observed Douglas throw the bags he had taken from his pants and run across the four-lane thruway, out of sight. (T. at 90). Once Douglas had fled the scene, the Officers re-engaged the video equipment. (T. at 96).

Douglas disputes portions of Officer Bonafede and Jurek's testimony. According to Douglas, Officer Bonafede attempted to pull Douglas' pants down in an effort to strip search him. (T. at 208) The petitioner asserts that, panicking at the at thought of being strip searched, he

2

ran across the highway. (T. at 209). The issue of whether or not Bonafede pulled Douglas' pants down was not argued at length during the state court suppression hearing. The most significant mention of the subject came on cross-examination, when Bonafede was asked: "Did [Douglas'] pants ever fall to his ankles or anything like that while you were doing that?" (H. at 31).[2] Bonefede responded "Not to my knowledge" and then proceeded to note that Douglas was wearing three layers of clothing. (H. at 31-32).

Douglas' testimony at the trial[3] in this case appears to contradict the claim that Officer

---

[2] Citations to "(H. at __)" refer to the transcript of the Suppression Hearing dated July 24, 2002)

[3] The Court also takes notice of the Decision by this Court in an affiliated civil rights case initiated by Douglas in this Court, Douglas v. Bonafede, Civ. No. 05CV59. The petitioner raised similar claims in that case. In that case, the Court held that Douglas' Grand Jury testimony also contradicted his claims of Bonafede's conduct regarding the search of his pants. Before the Grand Jury, Douglas made conclusory statements about being subjected to a strip search, but described Bonafede's actual conduct as follows:

> A: ... After he strip searched [one of the other occupants of the car], he came to me. I said, "I'm not going to strip search." He took the camera off. A lot of things are going through my head like why did he turn the camera off and now he's strip searching me. I was rebellious, like, "Ain't nobody going I my pants or doing nothing." He literally grabbed by pants and was struggling. This is where my resistance come in because I'm not letting him go in my pants. I keep telling him, "If you want to go in my pants, arrest me. You already had me in the car. If you felt I did something wrong, you could've arrested me and read me my rights and took me down and then we could've done that." He grabs my pants and there's resisting going on. I got scared. I'm high on weed. I smoke marijuana.
> Q: You were high?
> A: Yes, I was high. At this time I'm scared on the highway, going in my pants. I don't know what is the outcome. I break loose and I'm running. I run across the street. I could've got killed.
> Q: Thruway?
> A: Yes. I took the chance.

(Douglas v. Bonefede, Civ. No. 05CV59, Docket No. 42 at page 4).

3

Bonafede actually pulled Douglas' pants down exposing him to public view. Although he uses the phrase "strip search," Douglas' testimony at trial suggests, at best, that Officer Bonafede attempted to search inside Douglas' pants. Douglas testified:

> A: ... The other trooper, Jurek, I believe his name is, he puts me in the car. And Bonafede comes to me and he said, pull your pants down. You know, I'm not pulling down my pants. I feel that's a violation. Why do you feel you have to strip search us? Why don't you arrest us and take us down. I'm in the car. I'm at the car trying to explain it to him, I've been locked up before and I never seen nobody get strip searched. So at that point he said, you don't want to get strip searched? And I said, no. So he like forced – grabbed my pants, you know, just trying to overpower me with my pants, and I'm just holding my pants, why you trying to strip search me, and he just trying to get my pants loose. And once I break loose, I start running. I got scared at that point as far as him grabbing my drawers.
>
> Q: Where did you run?
>
> A: I ran straight across the highway to my left.

(T. at pages 209-210).

Shortly thereafter, Officer Philip Mosack received a call from a dispatcher that someone was riding a bicycle along the thruway. (T. at 142). He proceeded along the highway, observed and stopped the bicyclist, who was identified as Douglas (T. at 140-41, 143-147). Later that evening, during their investigation, the police learned that Douglas had stolen the bike from a garage. (T. at 172-74). During subsequent questioning, Officer Robert Montgomery read Douglas his <u>Miranda</u>[4] rights and began interviewing him. (T. at 153-56). At 11:05 p.m., when Douglas asked to speak with an attorney, Officer Montgomery stopped the interview. Since Douglas had invoked his right to counsel, another officer re-read Douglas his <u>Miranda</u> rights. (T. at158). After receiving his <u>Miranda</u> warnings again, Douglas agreed to continue the interview without an

---

[4] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

attorney. (T. at 159). Officer Montgomery resumed the interview until Douglas asked to stop talking. (H. at 47).

Douglas was indicted on charges of Burglary in the Second Degree (N.Y. Penal Law § 140.25(2)),Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)), Petit Larceny (N.Y. Penal Law § 155.25), Resisting Arrest (N.Y. Penal Law § 205.30), Criminally Using Drug Paraphernalia in the Second Degree (N.Y. Penal Law § 220.50(2)), and Unlawful Possession of Marijuana (N.Y. Penal Law § 221.05). Prior to his trial, Douglas's trial counsel moved for a hearing to suppress evidence from the traffic stop and statements made later that evening. Following a Suppression Hearing, the trial court denied Douglas's motion to suppress evidence. Douglas went to trial and was found guilty on all counts. (T. at 291-93).[5]

Douglas challenges his state court convictions on four grounds: 1) the police obtained evidence through an illegal search, violating Douglas's Fourth Amendment rights; 2) there was insufficient evidence to support his conviction; 3) his sentence was excessive; and 4) he received ineffective assistance of counsel from his appellate counsel, who failed to argue that Douglas had

---

[5] On January 27, 2002, Officer Bonafede transported Douglas to the Town of Phelps court for arraignment. During the car ride, although he had not re-read Douglas his Miranda rights, Officer Bonafede asked Douglas why he had chosen to steal a bike. (T. at 100). Because, Douglas replied, he could not find the keys to the ATV in the garage. (T. at 100). On appeal, it was determined that this statement should have been suppressed. Douglas' conviction on the burglary charge was reversed (all other convictions were affirmed). People v. Douglas, 8 A.D.3d 980, N.Y.S.2D 622 (4th Dept. 2004), lv. den., 3 N.Y.3d 705 (2004). However, rather than undergo retrial with respect to the burglary charge, Douglas pled guilty to attempted burglary and was sentenced separately to four years imprisonment to be served consecutively with his sentence on the other charges. (Docket No. 5 at page 9-10; Transcript of October 14, 2004 Plea and Re-Sentencing at page 10). The instant petition for habeas corpus relief does not address this charge.

received ineffective assistance from his trial counsel.

## DISCUSSION

**Exhaustion**

Federal courts may only grant a writ of habeas corpus upon a constitutional challenge that has first been "fairly presented" to the state courts. 28 U.S.C. § 2254(b)(1)(A); See Willette v. Fischer, 508 F.3d 117, 121 (2d Cir. 2007) (citing Picard v Connor, 404 U.S. 270, 275 (1971) ("We emphasize that the federal claim must be fairly presented to the state courts.")). A state prisoner must exhaust state remedies for every claim in a federal habeas petition to receive consideration. Rose v. Lundy, 455 U.S. 509 (1982). Exhaustion requires the prisoner to present the challenge to the state court in a manner "likely to alert the court to the claim's federal nature." Daye v. Attorney General, 696 F.2d 186, 192 (2d Cir. 1982).

Respondent does not contest Douglas's exhaustion of state court remedies. Based on the record before the Court, it appears that the Douglas has exhausted his state court remedies and therefore review of the claims asserted in the petition is appropriate under § 2254(b)(1).

**Standard of Review**

To prevail on a federal habeas corpus claim, a petitioner must demonstrate that the state court violated petitioner's Constitutional rights under 28 U.S.C., § 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), § 2254(d) permits a federal court to grant a habeas corpus petition in only two situations. The state court's adjudication of the claim must have:

6

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA, § 2254(d).

State court findings of "historical facts," and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F. 2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986); See also 28 U.S.C. § 2254(e)(1) (stating that "a determination of a factual issue made by a State court shall be presumed to be correct."). The habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. AEDPA, § 2254(e)(1). State trial courts and state appellate courts are entitled to that same presumption. Smith v. Sullivan, 1 F. Supp. 2d 206 (W.D.N.Y 1998) (Larimer, C. J); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert denied, 490 U.S. 1059 (1989).

Petitioners can overcome the deference provided to state courts by establishing that the "decision was defective in some way." Smith, 1 F. Supp. 2d at 12. The statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v Ahitow, 104 F. 3d 926, 936 (7th Cir. 1997) (quoting Emerson v Gramley, 91 F.3d 898, 900 (7th Cir. 1996) cert. denied, 520 U.S. 1122 (1997)); see also Houchin v Zavaras, 107 F. 3d 1465, 1470 (10th Cir. 1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion"). Thus federal courts may only grant a writ of habeas corpus in limited contexts:

7

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.
>
> Under the "unreasonable application" clause, a federal habeas court may grant a writ if the state identifies the correct governing legal principal from this Court's decisions's but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).


**Ineffective Assistance of Counsel and**
**Fourth Amendment Claims**

The petitioner asserts that evidence introduced at trial should have been suppressed on the grounds that Officer Bonafede's testimony at the suppression hearing was not credible. In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held that Fourth Amendment claims are not cognizable on federal habeas review so long as the state has provided the petitioner with an opportunity for full and fair litigation of the claim. Stone v. Powell, 428 U.S. at 481-82. The record reflects that the petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state court. Thus, habeas corpus relief is not warranted on this ground.

Further, Douglas argues that his trial counsel was ineffective in the conduct of the suppression hearing in that he failed to properly review discovery materials, or to ask for an adjournment to review newly disclosed material prior to the hearing. The petitioner asserts that had trial counsel done so, he would have been able to demonstrate "(1) that a clear demarcation in time occurred where Bonafede admitted that the traffic stop was over and there was no

probable cause to "arrest anyone" .... (2) that after that clear and decisive point in time, Bonafede turned off the only patrol camera recording the stop and then decided, on a whim, to detain petitioner in a custodial setting by placing him [in] the patrol car after an-already lengthy stop, which amounted to a de facto arrest; (3) that Bonafede lacked probable cause or even reasonable suspicion to do so; and (4) that the ultimate search which led to the recovery of the contraband used for the possession conviction was a direct consequence of the unlawful arrest ... ." (Docket No. 25 at page 4).

The petitioner's claim of ineffective assistance must be analyzed according to the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that the test for an ineffective assistance claim in a habeas corpus case is whether the petitioner received "reasonably competent assistance." Strickland, 466 U.S. at 688. In deciding this question, the court must apply an objective standard of reasonableness under prevailing professional norms. Id. Generally, defense counsel are "strongly presumed to have rendered adequate assistance ..." Strickland, at 690. To succeed on such a claim, then, the petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). If defense counsel's performance is found to have been defective, relief may only be granted where it is shown that the defense was actually prejudiced by counsel's errors. Strickland, supra, 466 U.S. at 692. Prejudice is established upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court determines the presence or absence of prejudice by considering the totality of the trial evidence. Id. at 695.

The petitioner does not appear to dispute the basis for the original stop. The record in the instant case demonstrates that there was no clear and decisive break in time separating the traffic stop with Officer Bonafede's observation of Douglas hiding something (which turned out to be drugs) in his pants. The testimony reflects that after the cursory search of the occupants of the vehicle (H. at 9), Irvin admitted that he had been smoking marijuana (H. at 9). While the officers were talking with Irvin regarding his marijuana use, Officer Bonafede observed Douglas adjusting something in his groin area (H. at 11; T. at 88). The petitioner asserts that Officer Bonafede's attempt to search Douglas' pants took place 45 minutes after the initial stop. (Docket No. 25 at page 12). The time elapse between the stop and Officer Bonafede's attempt to search Douglas's pants after observing him hiding something was not unreasonable and did not render the search separate and distinct from the stop. The record reflects that after stopping the vehicle, Officer Bonafede approached the car, smelled the odor of marijuana, obtained identification from the vehicle occupants and then returned to his patrol car and waited 15 to 20 minutes for backup to arrive before proceeding with the stop. (T. at 85-87). The fact that Officer Bonafede turned off the video recorder does not have the factual or legal significance of dividing the stop into two separate and distinct occurrences. Minor inconsistencies between Officer Bonafede's Grand Jury and trial testimony as to the sequence of the events would not impact the ruling as to the denial of suppression. The record reflects that probable cause existed to stop the vehicle; that Officer Bonafede smelled the strong odor of marijuana emanating from the vehicle; and that at least two of the vehicle occupants admitting that they had smoked marijuana. The officers did not act improperly in questioning the occupants of the vehicle or further investigating for the presence of drugs. Upon observing Douglas adjust something in his pants, in light of the totality of the

10

circumstances, Officer Bonafede had probable cause to investigate whether Douglas was hiding drugs or weapons in his pants. The petitioner has not articulated a factual or legal argument which trial counsel failed to assert in the state court proceedings that would have likely resulted in the suppression of the evidence. The petitioner has not demonstrated that trial counsel's performance was ineffective. Douglas's claim for habeas corpus relief on this ground is denied.

**Insufficient Evidence**

Douglas contends that the evidence presented at trial was insufficient to support his conviction of criminal possession of a controlled substance in the third degree. As an initial matter, the respondent asserts that Douglas is procedurally barred from asserting this claim.

Upon appeal, the Appellate Division, Fourth Department held that Douglas's contention "regarding the legal sufficiency of the evidence and his sentencing as a second felony offender are not preserved for our review." (See June 14, 2004 Memorandum and Order attached as Exhibit C to Docket No. 4; see also People v. Douglas, 8 A.D.3d at 981). A federal court normally may not review a habeas petition based upon state claims that have been procedurally defaulted where the relevant procedural bar is an "independent and adequate" state ground. Brown v. Greiner, 409 F.3d 523, 532 (2d Cir.2005). This rule applies when a "state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim ." Green v. Travis, 414 F.3d 288, 294 (2d Cir.2005) (internal citation omitted). A procedural default may be avoided when a petitioner shows (1) cause for the default and prejudice or (2) "that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent."

11

Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir.2003); see Marrero Pichardo v. Ashcroft, 374 F.3d 46, 53-54 (2d Cir., 2004) (miscarriage of justice would occur as a result of procedural default of claim in motion challenging removal order that was "virtually certain to succeed if considered on appeal"). In the instant case, the petitioner has not demonstrated cause and prejudice excusing the procedural default.

In any event, even if the petitioner were not procedurally barred from maintaining this claim, it would still lack merit. When reviewing a claim of insufficient evidence, courts must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The reviewing court must defer to the jury's "assessments of the weight of the evidence and the credibility of witnesses," Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996), and may only grant habeas relief if the petitioner has shown that, "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt," Jackson, 443 U.S. at 324, 99 S.Ct. 2781; accord Dixon v. Miller, 293 F.3d 74, 81 (2d Cir.2002); see also Herrera v. Collins, 506 U.S. 390, 401 (1993). The jury is exclusively responsible for determining the credibility of a witness, and a habeas court may not revisit the fact-finder's credibility determinations. Marshall v. Lonberger, 459 U.S. 422, 432-35 (1983); United States v. Strauss, 999 F.2d 692, 696 (2d Cir.1993). As the Second Circuit has instructed, " '[t]he task is to ascertain whether the record evidence on which the trier of fact relied was of sufficient quality to support the verdict.... Since it is the trier of fact that weighs the evidence, determines credibility and draws inferences from historic to ultimate facts, a federal court, in analyzing sufficiency, should not "ask itself whether it believes that the

evidence at the trial established guilt beyond a reasonable doubt."... Instead, it stands in the shoes of the state trial court, and must consider whether a rational trier of fact could properly find or infer that the accused is guilty beyond a reasonable doubt.' " Rapetti v. James, 784 F.2d 85, 91 (2d Cir.1986) (quoting Mallette v. Scully, 752 F.2d 26, 31 (2d Cir.1984) (quotations and citations omitted)).

In determining a sufficiency claim, the Court must look to state law as to the elements of the underlying crime. Ponnapapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). In New York, criminal possession in the third degree requires 1) knowledge; 2) unlawfully possessing; 3) a narcotic drug; and 4) intent to sell the drug. N.Y. Penal Law § 220.16(1). The knowledge element is satisfied by constructive knowledge. See e.g., People v. Hines, 97 N.Y.2d 56 (N.Y. 2001). Possession requires that a person "have physical possession or otherwise to exercise dominion or control over tangible property." N.Y. Penal Law § 10(8). Narcotic drugs are delineated in § 220.00(7) of the Penal Law. N.Y. Penal Law § 220.00(7). Finally, to sell "means to sell, exchange, give or dispose of to another, or to offer or agree to do the same." N.Y. Penal Law § 220.00(7). Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence that Douglas was guilty of criminal possession of a controlled substance in the third degree. At trial, Bonafede testified that Douglas took three bags of crack cocaine out of his pants and threw them. (T. at 88-91). Forensic scientist Elizabeth Murphy testified that the material contained in the bags thrown by Douglas was determined to be cocaine and marijuana (T. at 194-197). Further, New York State Trooper Robert Montgomery testified that he interviewed Douglas after his arrest. According to Officer Montgomery, subsequent to advising Douglas of his Miranda rights, Douglas stated that "he bought [the drugs] in the city for two

13

hundred dollars, and that he could get six hundred dollars for selling a little at a time in the City of Geneva."(T. at 157). The evidence adduced at trial was sufficient to support Douglas's conviction on charges of criminal possession of a controlled substance in the third degree. Habeas corpus relief is denied on this claim.

**Excessive Sentence**

Finally, Douglas argues that he was wrongly sentenced as a second felony offender. As discussed above, upon appeal the Appellate Division, Fourth Department determined that Douglas failed to preserve this claim for review. (See June 14, 2004 Memorandum and Order attached as Exhibit C to Docket No. 4; see also People v. Douglas, 8 A.D.3d at 981). Once again, the petitioner has failed to demonstrate cause and prejudice to excuse this procedural default.

Even if Douglas was not procedurally barred from maintaining this claim, it would have to be denied. Douglas does not appear to dispute that he had a prior felony conviction, but argues that at the time of that prior conviction he should have been afforded "the discretionary option of sentencing as a youthful offender." (Docket No. 1 at Bates No. 000124). Whether Douglas was eligible for such discretionary relief in connection with his initial felony conviction, he was not, in fact granted youthful offender status with respect to that conviction. The petitioner has not demonstrated that a Court exercising habeas corpus review over a subsequent conviction could impute such youthful offender status. Further, the petitioner has not demonstrated that his sentencing as a second felony offender was in violation clearly established Federal law, as determined by the Supreme Court or an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding. Finally, it is undisputed that the sentence the petitioner did receive was within the statutory range for a second felony offender. Therefore, habeas corpus relief must be denied on this claim as well.

**Conclusion**

Based upon the above, the petition for habeas corpus relief is denied in its entirety.

Furthermore, inasmuch as the petitioner has not made a substantial showing of the denial of a constitutional right; or that reasonable jurists could debate whether the petition should have been resolved in a different manner; or that the issues presented are adequate to deserve encouragement to proceed further; a certificate of appealability will not issue. Love v. McCray, 413 F.3d 192 (2d. Cir.2005); see 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this order in forma pauperis would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

So Ordered.

                                                                                  /s/ Hugh B. Scott
                                                                                  United States Magistrate Judge
                                                                                  Western District of New York

Buffalo, New York
April 8, 2009